Good morning, Your Honors. My name is Alan Fleischman. I represent Melissa Moreland, now Melissa D'Soura. She's present in court, as is her husband and her mother. I believe that the issue that the Court posed in its order essentially is as follows. Does the finding of not guilty by reason of insanity, regardless of the prong of the insurance contract, and willfully under Section 533 of the Insurance Code? And, of course, if it does, then there would be coverage. Allstate, in its brief, sets forth a single case, which is an unpublished case, and I'll come back to that, as its argument that a finding of not guilty by reason of insanity goes only to punishment, and that's the case. Just to help me out a little bit here, this is odd procedurally, from the standpoint that why didn't Moreland appeal the second summary judgment order? I mean, we've got two, and, I mean, generally, the second one would be the final one. And isn't the analysis, I guess, basically the same, you know, in relation to the requested per se rule, or whether the Court reviews the first or the second? Or, I mean, usually the second one would be the one that you would review. The reason, Your Honor, is that the Court had made a determination that it wasn't a matter of a finding of legal insanity, but a determination of which prong of the test Mr. Griffin met at the time of the stabbing. And because of that, and because the facts were reflective of a person who at least knew he held a knife, and the magistrate had taken the position contrary to the experts that the act of holding the knife and understanding that he's stabbing would be sufficient to demonstrate that he understood the nature and quality, we felt that was not something we could win. We have to win. If we win at all, it's because this Court agrees with me that the law, based on Kearns, based on a state of Ladd and Radov-Shalom, is very specific that a finding of not guilty by reason of insanity, regardless of the prong, is sufficient. And that's why we've attacked the, why we challenged this. But you're asking to import the criminal finding into insurance law, essentially. Yes. As I believe those cases have done in the past. I believe it's consistent with California law. And I, of course, that's why I believe that this Court has the ability to make a decision today. Well, you both believed that. You know, unfortunately, that wasn't really too helpful to me on the certification issue, because you both basically took the point you have all, you have everything you need here to have me win. And you both took that position. Well, I'm not sure that really, you know, I'm not faulting either of you, but you both basically took that position. And it wasn't, I think the certification issue is just a little more complicated than either of you would have me believe anyway. Well, I did say, with all due respect, that if you don't, if the Court doesn't agree that it is as clear as I believe it to be, then, yes, it's appropriate to refer the matter to California court for the final determination. I found a case after I received all States' brief which referred to the Schlosserich case, the unpublished case I want to come back to. But I want to give the Court a citation, because I think this case is dispositive of that issue of whether or not it is merely punishment. Because if it's not merely punishment, then again, I think we're on very strong grounds on all fours with regard to the issue of whether or not a finding of not guilty by reason of insanity resolves the matter. And this is the case of People v. Lyons. It's a 1971 case at 18 Calap 3rd, 760 at page 780, 96 Cal Reporter 76. And it's cited by Witkin in his volume 5 of this treatise on California criminal law at page 968. This is what it says. It is well established that where an insanity plea is joined with a plea of not guilty, the trial and the verdict are not complete, and the Court cannot impose a sentence after a verdict of guilty until and unless the insanity issue is first tried and the defendant found to be sane at the time that the offenses were committed. So I do believe, and Witkin believes, that that's dispositive of this issue. Now, she lost it. Well, there's really – it's a little bit apples and oranges in the sense that there's some real policy considerations here. I mean, in terms of – you probably have the best facts in terms of – because NGI happens in so few cases. People – they don't like to claim it very often, because you can actually serve the rest of your life in prison under NGI. And so as a practical matter, those of us that have been trial judges know that generally people claim it when they're facing murder. They don't claim NGI when they're facing petty theft, and they can just go in and out. So – and I mean – and the process also requires that at the first stage they're found guilty, and then there's a second stage of where they're essentially treated differently. But in the first stage, the jury finds them guilty of intentional acts many times. And then in the second stage, they say, but we're not going to hold you criminally responsible in the sense – we're going to send you to a mental hospital until you're better. And so, I mean, they're really – you know, I guess – although this is – this policy has some exclusion written in that has to do with mental problems, but couldn't they then write insurance policies and say, if you're – we're not going to – if you're found not guilty by reason of insanity, we're still not going to – we're not going to make that insurable act? Well, they absolutely could, and in fact, they – But they didn't here exactly, but here it's a little bit different. They've left it open. And I pointed out in my brief two cases that all State is involved in. They're named as the appellants in those cases – as the respondents. They're from other jurisdictions, but I cited them in my opening brief. Cyril versus Allstate and Kerry versus Allstate. In Cyril, the Allstate policy exempted suicide whether, quote, sane or insane. So they had that in their mind. And in the Kerry case, the policy excluded acts by an insured who lacked the mental capacity to appreciate the nature or wrongfulness or to form the necessary intent. So, again, you have – they have the opportunity. They didn't do so in this case. It may have been merely inadvertence in their California homeowner's policies. Well, I'm sorry. Go ahead. What is the significance of that clause which says an insured person lacks the mental capacity to govern his or her conduct? Isn't that an insanity issue? Right. If they – if the person is found to be not guilty by reason of insanity, it is a finding that they don't act intentionally. And I've cited a number of cases, as did the magistrate. But that shows that it's excluded to me. That's in this policy. Why is that not applicable? Because it's not limited. It's a – only a finding of not guilty by reason of insanity reaches a conclusion that has specific legal meaning. And we've seen that in the Ladd case. We saw that in Rodef Shalom. We saw that in Kearns. So I really do argue – I believe, Your Honor, that it's generically true that if you're not found legally insane and you do an act which by its very nature suggests that you knew what you were doing or that you should have known the consequences of your conduct, you have a different matter than you do when you've litigated the matter to a jury or a judge. If a jury, by a unanimous verdict, where the burden is a preponderance of the evidence, when you've done that, then you've created a bright line. And that's what we believe to be the best approach to take in this matter. Creating a bright line, namely legal insanity, gives everyone an opportunity to recognize whether there will be coverage or not. The alternative is what we had here, namely two experts opined in their depositions, both experts, that they didn't think that Griffin understood the nature and quality. Nevertheless, the magistrate overruled their findings, taking a position that she believed to be the better position, perhaps the more practical, and she dismissed the findings of the two experts. And like- Let me, let me, that's sort of what's been bothering me about the case. You know, I think it's a difficult case because you've got different jurisdictions are split on the precise issue that we're looking at here. But given the policy and the fact that it didn't address this precisely, is there a factual issue that should just be, it should go to a jury? With definitions, and the experts should be able to come in and shoot at each other, and the jury should make a determination of whether or not there's an intentional act? Recognizing that the, you know, by reason of insanity is a finding and the judge would determine what to make of that one way or the other. Well, we don't believe that would be appropriate in this case. We do believe- Well, you guys teed it up, not you guys. I mean, you parties teed it up in a way that you stipulated the facts, right? And basically said it's going to be one way or the other, and it's going to be 100,000 if- That's right. So, I mean, it seems to me, though, that you can't, if that's where you put it, you can't fault the magistrate for rejecting certain findings. I mean, if it was a, I would look at it and say, I think it's a factual issue at this point, if we don't decide as a matter of law one way or the other. But you've kind of foregone that route, so it's either one side wins or one side loses. Is that correct? Yes, and that's because I do believe that looking just at Estate v. Ladd, for example, Estate of Ladd. In the Estate of Ladd case, this is the case where the mother kills her children and then sought to inherit. I thought the Court was very clear in that case that the statute, which would have otherwise prevented her from inheriting, allowed the exception for legal insanity. You'll not find a single case in California where the distinction that is drawn is between nature and quality and right and wrong. So we're really, although we pointed out, as did counsel for all State, that there are alternate lines in the Federal courts, there's not one case in California that has ever done anything but define the line at legal insanity. Well, now, correct me if I'm wrong, but is another way that you could lose that all State is proposing is to find that it's not an occurrence. Is that correct? They argue that it's separate. I have argued, because I believe it's common sense, that if you can't act intentionally and you've not acted criminally, then you've not had an occurrence. An occurrence is an accidental event, and the absence of intent provides an opportunity to prevent an occurrence, and it provides us with accident. You'll also note that the cases always say, they say that it is, they refer to 533 and the insurance policy. Now, just so I understand your argument, but they're basically saying you are conflating it, and they're arguing that they could separately prevail on that this is not an occurrence. But you're saying that you're not conflating it, it's just really that they necessarily it has to be considered to determine an occurrence. Is that right? It would have to be if it's the, because there'd be no other explanation. I might take a moment as well to talk about A, Section A, the exclusion. And in Section A, that was the exact wording is that the insured lacks the mental capacity to govern his conduct. And the Clemmer case that that addressed said exactly lacked such capacity to govern his own conduct. So just to put that to rest, I do believe that those are so identical that no other alternate choice would make sense. And I wanted to remind the court that the Schleser case is really in violation by citing an unpublished California case, violates the federal rules of appellate procedure, Section 32.1, and the California rules of court, Section 8.1115. Nevertheless, in that case, he pled nolo, so it's not relevant and it was merely dicta. And I'll reserve, but let me just leave the court with this thought before I let all states speak. I believe that by limiting coverage to those matters involving judicially declared, legally insane persons, judicially declared, which I believe to be in keeping with California law, avoids the battle of the experts that can take years, as we've seen in this case, and provides a bright line, that bright line for the courts, the insurers, and the public with regard to matters of insurance coverage. Thank you. Good morning, your honors. Brandon Fish on behalf of Allstate. If I may at least start with one aspect of the Slosh-Erik case that was cited. It is an unpublished state court decision, but there are several cases from this court that have acknowledged that unpublished state court decisions can be persuasive. They're not controlling, but they are persuasive and can be considered, especially when it comes to statutory interpretation. And what the Slosh-Erik case looked at was the penal code section 25. And what is the insanity defense, and whether or not that negates a criminal act. And in Slosh-Erik, they looked at whether or not a person who was insane, he did plead no contest, but he was considered insane at the time he did the act. Whether or not that negated a criminal act, for the purposes of determining state immunity, since it was a lawsuit against the state of California. In that case, the court came back and said that the insanity defense does not negate a criminal act. That even if there is a finding that somebody is insane under penal code section 25, that person can still commit a criminal act. And as your honor mentioned before, when you're looking at the insanity defense, there really is a two-step process in the criminal action. It's first, a determination of whether or not the act was a crime, and then second, whether or not that act should be criminally punished. And it's that second portion where the court then determines whether or not somebody is insane. And the Slosh-Erik case came back and said with the first part, since the first part was met, there was a crime, there was a criminal act, and therefore, there was no, it said there was immunity, or excuse me, no immunity as to the state. But it did find that there was a criminal act. It also addressed the Kearns case. And in that situation, it said that with Kearns, Kearns was looking at it as an intentional act, not a criminal act, so it dismissed Kearns on that count. But it also mentioned that Kearns makes it an issue, it's a factual issue, it's not determinative. And in the Kearns case, the court in that case, the trial court, found that the insured was, quote, unquote, legally insane. There was no criminal judgment, because again, it was a no contest plea, but you had a trial court consider the insured to be legally insane. But then the court came back and stated that the insanity is just another factor for the court to consider, it is not controlling, even though the trial court found the insured to be legally insane. That was just a factor to be weighed with other factors that the company, the insurance company, could present opposing evidence that would lead to whether or not that person intended the acts, or whether or not that person's acts constituted an occurrence. Are you saying now- You're saying, go ahead. That this is a factual dispute that should be presented to a jury? It should be presented to the trier of fact. It is a dispute, and that, with the Jacobs case, and Kearns, and Rodolf Shalom, all the cases come back and do not say a criminal insane finding automatically means that there is no intentional conduct for insurance purposes. They all state that the insanity finding may negate intent, may show that it's accidental conduct, or may negate willfulness. As Jacobs said, it didn't even- I'm having a little trouble. Just let me just get the procedural posture. You moved for summary judgment, correct? Correct. So you're saying there's not a factual issue? So summary judgment means there's no material facts. Your Honor, it's a factor for the trier of fact to consider. And the trier of fact in this case, because it was a declaratory relief action, was the judge. It's a bench trial, and that is one reason why, when you're looking at the first summary judgment, it comes back to a point brought up before why appeal the first summary judgment but not the second. In looking at the first summary judgment, the court denied the motions for because the court found that the finding of legal insanity at the criminal court level was not conclusive in this insurance matter. That additional facts were necessary to determine what the insured actually understood, what the insured did at the time of the incident. So in a matter of speaking, Your Honor, with the first summary judgment motion, it was denied because of a factual issue. And again, it goes back to with Kearns and with Jacob saying legal insanity may negate willfulness. It's just another factor to be considered, that the trier of fact should consider. And that is what happened when we got to the second summary judgment. Once we had the additional record from the experts who- But see that, it's not played in the pleadings. It's played as a summary judgment, not a trier of fact making factual determinations or heeding to one factor or the other. Again, Your Honor, I agree with you when it comes to when you're looking at the first summary judgment motion. And that is the problem with the standard per se rule that the appellate is advocating. I'm looking at the second. The second one, the court made the findings based on- They grant the motion for summary judgment. With the second summary judgment motion, the court did grant it because the court found, based on the evidence submitted, that the insured knew he was picking up a knife, knew he was attacking a person, and knew that attacking that person would cause harm. On that motion for summary judgment, though, doesn't the court have to draw all inferences against your moving party? Wouldn't that mean that it couldn't make that determination, but would have to do it as a court trying the case, so to speak? We had a couple of procedural aspects to that. First of all, we did have the cross motions for summary judgment. The procedural history of this is a nightmare. It really is causing confusion. I would agree. It definitely is not the cleanest case procedurally. But when we do have the second round of cross motions for summary judgment, that is, again, we presented some stipulated facts and some facts that were not stipulated, but it was the fully developed factual record for the court to consider in light of whether or not Mr. Griffin's conduct was an occurrence, whether or not the intentional act exclusion applies, whether or not the criminal act exclusion applies, and whether or not- You're saying that they don't have a right to a jury trial if there's a factual issue? I'm not saying that. I'm saying that- Well, I'm just trying to understand, because, you know, in these insurance coverage cases, sometimes there are disputed facts. Now, we have an odd situation where her counsel says there are no disputed facts. You're saying, well, there's disputed facts, but the court made a determination. Your Honor, I think the way to clarify that is, again, looking at the bright line rule that the appellates are advocating, that simple order from the criminal court of a finding of not guilty by insanity, that that bright line test that they're advocating is something that does not answer all the questions in the insurance matters. And that is why the cases like Jacob come back and-excuse me, Jacob and Kearns come back and say the sides can bring in the evidence and bring in opposing evidence, it does not automatically mean that it's not an intentional act, that the conduct is an occurrence. But I'm understanding you both to say that you should win on-neither of you are asking for a trial, that you're both saying that you should win on summary judgment.  It's important that we have and that appellant should win because we should import the not guilty by reason of insanity finding and, therefore, that would take it out of a criminal act and, therefore, they would get the $100,000. I understand that, Your Honor, and the problem with that- So no one here is asking for a trial? No. Everyone is just saying they want to think that we have everything we need to determine as a matter of law and that you're both supposed to win legally. And that's correct. Neither side is asking for a trial. Again, what their position is, is you stop the factual analysis at the not guilty by reason of insanity finding in the criminal court. And there's no California law to support that. What all States are arguing is based on the fully developed undisputed facts in the second summary judgment motion, that based on those undisputed facts, the court made, the district court made the correct decision as a matter of law that the insurer's conduct did not constitute an occurrence. But the appeals from the first summary judgment. Correct. And that's why we go back to the first summary judgment. So I guess- And that's the- Well, exclusion 1A excludes coverage for property damage or bodily injury caused by an insured person's intentional act, even if he or she lacks the mental capacity to govern his or her conduct. So how does this exclusion impact the review of the first summary judgment order, which is what we're reviewing? Back at the first summary judgment, it was, again, all States' position that the fact that you had the insured go in and attack somebody, and it was undisputed that he went in and assaulted Ms. Moreland. It was based on the limited facts that we had for the first summary judgment. It was undisputed that there was an attack that took place. Therefore, based on the exclusion, the actions were, the bodily injury was intended or reasonably expected to occur by the conduct, the intentional conduct of an insured person, regardless of whether or not he was found not guilty by reason of insanity. Regardless of his mental processes at the time, with the fact that he, the pure fact that the insured attacked another, committed an assault, that was the intentional act. And that is why the exclusion applied. And when looking, again, at whether or not he was insane, courts, subsequent courts, such as Davis Court in the District of Hawaii, have come back and looked at the identical language, including that subsection A, and said, mental, the intent, the state of mind is irrelevant for the purposes of applying the intentional act exclusion. So going back to what was known for that first summary judgment motion, you had the specific act of undisputed act of the insured attacking another. And because of that, it was all States' position there and now that that was an intentional act. That is the type of act that the intentional act exclusion is intended to preclude. And with regard to whether or not he lacks the mental capacity, again, it goes back to mental. All right. You've agreed that if appellant wins, you pay, it's more than $100,000, right? The matter was settled to the point that if the court determines that Mr. Griffin's conduct was an occurrence and the intentional act exclusion, criminal act exclusion and insurance code section 533 did not apply, thereby finding coverage. Because he was found not guilty by reason of insanity. Well, based on the facts. Based on the facts of the claim, not necessarily that one fact because, again, it was all States' position that's irrelevant. But, again, that's why the issue was presented to the court. Because the two sides obviously disagree as to the relevancy of that fact. So the parties reached an agreement, which is one of the reasons why this is a duty to indemnify case only, not a duty to defend. We're not looking at whether or not there's a potential of coverage here. Just whether or not the act is actually covered. Because the defense, all States defended the insured in the underlying action. And then all States reached a settlement with Ms. Moreland. So the defense part is completely over at that point. So now we're looking at is there a duty to indemnify the policy limits of $100,000. And that is why we have to start looking at this point. Is the case actually covered? And is the conduct actually covered? Did this case go through the Ninth Circuit mediation program? Yes, it did, Your Honor. And a couple more points I'd like to make with regard to the Ladd case, the estate of Ladd. First of all, that's not an insurance case. Second of all, it's dealing with the probate code and inheritance laws, which are the Ladd case acknowledges are statutorily defined. So it's a statutory analysis of what is meant by unlawful and intentional. Because it was looking at conduct, whether or not it was unlawful and intentional. The problem with importing that case into the insurance context is manyfold. First, you have the Ladd case is decided on the prior version of Penal Code Section 26. That version states that an insane person could not commit a crime. The current version of Penal Code 26 does not have that. And that was one of the keys to the Ladd court's finding, that an insane person could not commit a crime based on the old version of Penal Code 26. Since the Penal Code has changed, an insane person can commit a crime under the current law. Another problem with looking at whether or not an action is unlawful for the purposes of Probate Code 258, the court in 20th Century versus, excuse me, Safeco versus Robert S. A case that was cited in our papers, took a look at an illegal act exclusion. The insurance company trying to preclude coverage for something that is considered an illegal act. It did not have an intentional act or criminal act exclusion, just an illegal act. The California Supreme Court came back and said that that exclusion is invalid under the law, because anything could be an illegal act. A negligence claim could be an illegal act. Similarly, an unlawful claim could be negligence. It could be anything that could violate any law. Let me just ask you, let me ask you a question, because this is difficult. Obviously, from the standpoint, I mean, we have to make a legal determination, and I think clearly, you know, what happened to Ms. Moreland was horrible, and that whether someone's not guilty by reason of insanity or not, I mean, that's of little, you know, it's of little significance to the person that actually gets stabbed and suffers those injuries. That aside, just assuming hypothetically, if the appellant were to prevail in this on the legal issues, how would you write a policy around something like that? Your Honor, I'm not sure if there's an easy way to write a policy around something like that, because you start getting to a point where does the insurance company stop. If you start by saying the insurance company, if somebody is found at a criminal court of being not guilty by reason of insanity, well, the insurance company then could write that into a policy. But then what happens if somebody's intoxicated and they commit an intentional act, but they didn't know what they were doing because they're intoxicated? Well, that would not be something necessarily that is looked at in the insurance policy. There's insurance policies that have precisely that exclusion. That's how you write it in. You say if, you know, you're intoxicated, that doesn't, this exclusion applies even if the insured is intoxicated. And that's true. But once you start writing in very specific factors, then if you don't, if some case comes up that's a new novel area that is not one of the specifically identified factors under the insurance policy, well, then we're back in the same boat. Now you have to revise the policy again. And courts would also come back and take a look at, well, you specify all these, you know, 10 whatever enumerated acts that are considered to be intentional, but this new case is not identified in those 10. So, therefore, you must not have meant to exclude coverage for that when that may not be the case because this scenario never came up before. So the fact that maybe going forward in future versions could include a case that's not guilty by reason of insanity, but that's not the policy that's before the court and that's not the policy that was written here. The terms of this policy are clear, concise. They've been found to be not ambiguous by several courts. And those courts, granted, most of them out of state, but those courts have all found that even if you're found to be, quote, unquote, legally insane, you still get to the point of whether or not your conduct is accidental, whether or not the intentional act exclusion applies. You could still, an insane person can still commit an intentional tort. An insane person can still be liable civilly for intentional acts. Unless you're in Minnesota, for example, where you have a different rule. But in California, under Civil Code Section 41, an insane person is legally liable for their wrongs. And as the district court mentioned, I believe it was the Bashi v. Wardard case, that an insane person can be liable for an intentional act. And that's part of the reason why you can't import the criminal standard into the insurance matter. And, in fact, California courts have routinely rejected the idea of a criminal conviction having a conclusive effect in an insurance matter. Allstate v. Overton stated that it's evidence, it's something to be considered, but it's not conclusive. And what the appellant's bright line rule is trying to do is create new California law that contradicts all the previous law, that a criminal court conviction would be conclusive in the insurance matters. And California courts do not hold that. Allstate v. Overton and others have routinely rejected that position. I see I'm out of time. Thank you. Thank you. May it please the Court. Let me address the point that you raised, Your Honor, with regard to whether there should be a trial or not of the facts. First off, immediately after losing the first demur, I requested an interlocutory appeal, and the court had the right to deny it, and she did so. So we've always believed that that is where the case really was won or lost. I would say this. If this Court agrees with me that the line is bright, then the case is over. If the Court believes that the case stands or that, in fact, I believe this would be a new law, but that in California from now on we must show whether it was the which prong of the McNaughton test, then we would be entitled to a factual determination, because that factual determination did, in fact, not take place. It was not stipulated. Okay. So that's my next question. Yes. If I go back and I try to separate summary judgment one, which you appealed, and summary judgment two, which you didn't, summary judgment one, the Court says there's a factual issue. If that was correct, and we believe that was a basis for the holding, we would affirm that determination, that there's a factual issue. But since there's no appeal on the second, then wouldn't it essentially mean that the case would be over for you, because you've only appealed the first summary judgment in which she has said there's a factual issue, and if she was correct about that, then it would be an affirmance of that order? I don't know. Why not? I always have seen this case in the light of the law. It's the law of the case that we believe is controlling. Well, I'm just asking you if we determined that she was. Well, if you determined. I mean, you just told me two minutes ago that you thought, in fact, you did have a right to a jury or a trial because of a factual issue. And here the judge says there's a disputed question of fact. What if we agree with the judge and say, yep, you're right? Well, if you believe that she was right, and we didn't. Summary judgment number one. Right. I understand. And we didn't appeal the second demer. I would imagine I think I've lost at that point. So the only way for you to win is for us to determine as a matter of law that the finding permits coverage under the policy. Right. It busts the intentional part. Well, but it imports the entire criminal law definition, the two-pronged, and therefore under the facts of this case, if you import both prongs, your client wins. Then I win. Okay. Sure. And the alternative, I mean, the facts in this case, he was interviewed, Griffin was, nine months after the events while he was on medication, and he said he knew what he was doing. But, you know, we've always believed that that's just one more problem in this. At the time of the criminal case, which was contemporary to the events, there was no discussion of which prong he would have to meet because you know it's in the either-or. So to then come back, I mean, when we bargained with Allstate, if you look at bargaining consideration, it was understood that this matter would really be decided with regard to the insanity issue. It was the magistrate who I believe, if I remember correctly, first suggested that maybe only one of the two prongs would be appropriate. Well, so reversing the first summary judgment essentially we're saying is that the Court got that wrong in establishing what the test was. And the test is actually the two-prong test that is in the not guilty by reason of insanity. And if we import the criminal test into what the insurance test would be, then we reverse the district court and find in favor of you on the summary judgment in the first one. That's exactly right. Exactly right. But if we affirm the Court in saying that the Court got it right in terms of what the test was, then you lose. The case is over. Okay. I absolutely agree. And all of those cases that we've all cited, I suspect you all know this already. There's not one of them where the person was in fact found not guilty by reason of insanity. In fact, one of the cases that's cited by Allstate is the stress case, people versus stress, where the guy took an ax and he killed his wife because he wanted to bring attention to a conspiracy. He was found legally insane. So it's not relevant. I'd like to leave it with this thought. Of course, I'll answer any questions. But in Rodeff-Shalom, right, the – you know, I'm sorry that I can't find the point I wanted to make as a last point. I think both of you made very helpful arguments. Thank you very much. It's well briefed. You know, we have a split of authority outside of California. We have no precise answer in California. And, of course, that's why it may end up in the California Supreme Court to make the new law, if there is new law to be made. Right. The point with Rodeff-Shalom was just to say this, that the original trial judge had made it a specific finding that it would be either prong of the McNaughton rule. So when you read the opinion of the court in Rodeff and they're saying legal insanity, they never had in mind that there were two prongs. They had in mind that they were referring it back to the lower court. And this is in – not Rodeff, I'm sorry, in the Kearns case, that they were referring it back to the court. And by referring it back to the court with the understanding that the judge had made the determination that it was either prong, they were allowing for a final outcome, not based on which prong it would be held under. Thank you so much. Thank you both. Thank you. I thank both counsel for your arguments, very helpful. The case of Allstate v. Moreland is submitted. Do you need a break?
judges: McKeown, Callahan, Siler